JP:MPC

# M-10-635

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X

IN THE MATTER OF THE
EXTRADITION OF

  JAHMEL GLEN BLAKENEY,
      also known as "JR Stocks"


- - - - - - - - - - - - - - X

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANT

(T. 18, U.S.C., § 3184)


EASTERN DISTRICT OF NEW YORK, SS:

       I, Michael P. Canty, being duly sworn, depose and state

that I am an Assistant United States Attorney for the Eastern

District of New York and act for and on behalf of the Government

of the United Kingdom (the "Requesting State") pursuant to the

Treaty Between the United States of America and the United

Kingdom of Great Britain and Northern Ireland (1976) and the

Supplementary Extradition Treaty Between the United States and

the United Kingdom of Great Britain and Northern Ireland

(1986),[1]/ (the "Treaties," attached hereto as Exhibit A) with

respect to JAHMEL GLEN BLAKENEY, also known as "JR Stocks" (the

"defendant").

---

  [1]/ The island of Bermuda is an overseas territory of the
United Kingdom and is governed by the Treaties referred to above.

In accordance with Title 18, United States Code, Section 3184, I charge, on information and belief,[2] as follows:[3]

1.   <u>Foreign charge.</u>   The defendant JAHMEL GLEN BLAKENEY is duly and legally charged with having committed, in the jurisdiction of the Requesting State, the crime of Attempted Murder in violation of Section 289(a) of the Bermuda Criminal Code Act 1907. Article III of the Treaty provides that a charge for such offense shall serve as the basis for extradition.

2.   <u>Foreign arrest warrant.</u>   A warrant for the defendant JAHMEL GLEN BLAKENEY's arrest was issued on April 26, 2010, by Magistrate Judge Khamisi M. Tokunbo in Bermuda.

3.   <u>Facts underlying foreign charge.</u>

a.   According to an investigation by authorities of the Requesting State, the defendant JAHMEL GLEN BLAKENEY is charged in the attempted murder of two individuals. The following is a review of the underlying investigation and facts describing the defendant's criminal offense.

b.   On November 13, 2009, at approximately 9:30 p.m., victims Shakai Minors and Renees Kuchler were at the

_____

[2]   The information contained herein is derived from correspondence from the United States Department of Justice, Office of International Affairs and a request for a provisional arrest warrant from the United Kingdom.

[3]   Because the purpose of this Complaint is to establish only probable cause to arrest, I have not set forth a description of all the facts and circumstances of which the government is aware.

Southside Cinema in St. George, Bermuda.  Minors is a member of a
gang known as "42nd Crew."  BLAKENEY, a member of rival gang
"Parkside Crew," and his girlfriend, Jalicia Crockwell, were at
the movie too.  When BLAKENEY saw Minors and Kuchler, he left the
cinema to drive Crockwell home.  During the drive home,
Crockwell engaged in a series of text messages with Shaleek
Danies, the girlfriend of Parkside Crew gang member Prince
Edness.  These messages seem to suggest that BLAKENEY had
identified someone at the cinema and he expected "trouble" after
he took Crockwell home.

     c.    After the movie ended, at approximately 11:30
p.m., Minors and Kuchler returned to their vehicle.  A man
wearing a black jacket and a baseball cap approached the driver's
side of the vehicle and fired several shots from a handgun at
Minors and Kuchler.  After the shooting, the man with the gun ran
behind a nearby church.  A short time later, a black car was seen
coming from behind the church.

     d.    Subsequently, police arrived on the scene
and retrieved three bullet casings on the ground near the
victims' vehicle.  At approximately 2:30 a.m., on November 14,
2009, police officers set up a road block around the area of the
shooting.  A black Kia Sportage sports utility vehicle approached
the road block, but refused to stop.  Police pursued the vehicle
and the driver stopped a short distance later.

e. During the chase of the vehicle, the police noticed that the driver's window was half way down. This stretch of road was deserted and no other vehicles were seen. The driver of the vehicle was identified as BLAKENEY, and the passenger was identified as Parkside Crew member Sanchey Grant. Both men were arrested on suspicion of attempted murder and the vehicle was searched subsequent to the arrest.

f. The police recovered a 9 mm Berretta pistol from the area where the vehicle passed after evading the road block. The police believe the pistol was thrown from the sports vehicle during the pursuit. The police seized a black jacket and a baseball cap from the vehicle. Examination of the vehicle, items seized from the vehicle, and the suspects' clothing revealed component particles consistent with gunshot residue. Examination also confirmed the firearm recovered discharged the bullet casings recovered from the crime scene. An examination of BLACKENEY further showed gunshot residue on both of his hands.

g. BLAKENEY was released on bail but ordered to report to the police on December 12, 2009. BLAKENEY failed to report to the police. Subsequently, the police learned that BLAKENEY fled the jurisdiction.

4. Defendant JAHMEL GLEN BLAKENEY's presence in the United States. The defendant JAHMEL GLEN BLAKENEY, who is within the jurisdiction of this Court, may be found in Canarsie,

5

Brooklyn, New York. The defendant was arrested by the New York
City Police Department on June 5, 2010 within the confines of the
69th Precinct in Brooklyn for possession of a marijuana
cigarette. He was issued a desk appearance ticket directing him
to appear in court at a later date. Arrest paperwork further
reflects that the defendant resides in Canarsie, Brooklyn, New
York.

　　　5.　　The Defendant JAHMEL GLEN BLAKENEY's description.
The defendant JAHMEL GLEN BLAKENEY, a citizen of Bermuda and the
United States, was born on September 27, 1981. A copy of his
photograph and a copy of an identification document from the
provisional arrest request are attached hereto as Exhibit B for
identification purposes.

　　　6.　　Risk of flight. The likelihood of flight is
substantial if the defendant JAHMEL GLEN BLAKENEY learns of the
request prior to arrest. Whereupon, your complainant requests:

　　　　　a.　　that a warrant be issued pursuant to Title
18, United States Code, Section 3184, for the defendant JAHMEL
GLEN BLAKENEY's arrest;

　　　　　b.　　that the defendant JAHMEL GLEN BLAKENEY be
brought before this Court and the evidence of criminality be
heard;

　　　　　c.　　that if, on such hearing, the Court deems the
evidence sufficient under the provisions of the Treaties to

6

sustain the charge, the Court certify the same to the Secretary
of State in order that a warrant may be issued for the surrender
of the defendant JAHMEL GLEN BLAKENEY to the appropriate
authorities of the Requesting State according to the Treaties;
and

        d.    that this Court take such other actions as
may be required under the provisions of the Treaties and the laws
of the United States to meet the obligations of the United States
under the Treaties, including the seizure of any items or
materials in the defendant JAHMEL GLEN BLAKENEY's possession at
the time of apprehension which are related to the crimes charged
or which may be used as evidence.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant JAHMEL GLEN BLAKENEY so that he may be dealt with according to law.


LORETTA E. LYNCH
United States Attorney

By:

Michael P. Canty
Assistant U.S. Attorney

Sworn to before me this
7th day of June, 2010


UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

**EXHIBIT A**

TIAS 8468

*28 U.S.T. 227; 1972 U.S.T. LEXIS 379*

June 8, 1972, Date-Signed

January 21, 1977, Date-In-Force

**STATUS:**
 [*1]  Treaty, protocol of signature and exchange of notes signed at London June 8, 1972;
Ratification advised by the Senate of the United States of America June 21, 1976;
Ratified by the President of the United States of America September 10, 1976;
Ratifications exchanged at Washington October 21, 1976;
Proclaimed by the President of the United States of America November 17, 1976;
Entered into force January 21, 1977.
With exchange of notes
Signed at Washington October 21, 1976.

[NO LONG-TITLE IN ORIGINAL]

**TEXT:**
BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

**A PROCLAMATION**

CONSIDERING THAT:

The Treaty on Extradition between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland, a Protocol of Signature, and an exchange of notes were signed at London on June 8, 1972, the texts of which Treaty and related documents, are hereto annexed;

The Senate of the United States of America by its resolution of June 21, 1976, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty and the related documents;

The Treaty and the related documents were ratified by the President of the [*2]  United States of America on September 10, 1976, in pursuance of the advice and consent of the Senate, and were duly ratified on the part of the United Kingdom of Great Britain and Northern Ireland;

It is provided in Article XVI of the Treaty that the Treaty shall enter into force three months after the date of the exchange of instruments of ratification;

The instruments of ratification of the Treaty were exchanged at Washington on October 21, 1976; and accordingly the Treaty and the related documents enter into force on January 21, 1977;

NOW, THEREFORE, I, Gerald R. Ford, President of the United States of America, proclaim and make public the Treaty, Protocol of Signature, and the exchange of notes, to the end that they shall be observed and fulfilled with good faith on and after January 21, 1977, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this seventeenth day of November in the year of our Lord one thousand nine hundred seventy-six  [*3]  and of the Independence of the United States of America the two hundred first.

**EXTRADITION TREATY BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF THE UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND**

The Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland;

Desiring to make provision for the reciprocal extradition of offenders;

Have agreed as follows:

ARTICLE I

Each Contracting Party undertakes to extradite to the other, in the circumstances and subject to the conditions specified in this Treaty, any person found in its territory who has been accused or convicted of any offense within Article III, committed within the jurisdiction of the other Party.

ARTICLE II

(1) This Treaty shall apply:

    (*a*) in relation to the United Kingdom: to Great Britain and Northern Ireland, the Channel Islands, the Isle of Man, and any territory for the international relations of which the United Kingdom is responsible and to which the Treaty shall have been extended by agreement between the Contracting Parties embodied in an Exchange of Notes; and

    (*b*) to the United States of America;

[*4]  and references to the territory of a Contracting Party shall be construed accordingly.

(2) The application of this Treaty to any territory in respect of which extension has been made in accordance with paragraph (1) of this Article may be terminated by either Contracting Party giving six months' written notice to the other through the diplomatic channel.

ARTICLE III

(1) Extradition shall be granted for an act or omission the facts of which disclose an offense within any of the descriptions listed in the Schedule annexed to this Treaty, which is an integral part of the Treaty, or any other offense, if:

    (*a*) the offense is punishable under the laws of both Parties by imprisonment or other form of detention for more than one year or by the death penalty;

    (*b*) the offense is extraditable under the relevant law, being the law of the United Kingdom or other territory to which this Treaty applies by virtue of sub-paragraph (1)(*a*) of Article II; and

    (*c*) the offense constitutes a felony under the law of the United States of America.

(2) Extradition shall also be granted for any attempt or conspiracy to commit an offense within paragraph (1) of this Article if such attempt [*5] or conspiracy is one for which extradition may be granted under the laws of both Parties and is punishable under the laws of both Parties by imprisonment or other form of detention for more than one year or by the death penalty.

(3) Extradition shall also be granted for the offense of impeding the arrest or prosecution of a person who has committed an offense for which extradition may be granted under this Article and which is punishable under the laws of both Parties by imprisonment or other form of detention for a period of five years or more.

(4) A person convicted of and sentenced for an offense shall not be extradited therefor unless he was sentenced to imprisonment or other form of detention for a period of four months or more or, subject to the provisions of Article IV, to the death penalty.

ARTICLE IV

If the offense for which extradition is requested is punishable by death under the relevant law of the requesting Party, but the relevant law of the requested Party does not provide for the death penalty in a similar case, extradition may be refused unless the requesting Party gives assurances satisfactory to the requested Party that the death penalty will not be carried out.  [*6]

ARTICLE V

(1) Extradition shall not be granted if:

(*a*) the person sought would, if proceeded against in the territory of the requested Party for the offense for which his extradition is requested, be entitled to be discharged on the grounds of a previous acquittal or conviction in the territory of the requesting or requested Party or of a third State; or

(*b*) the prosecution for the offense for which extradition is requested has become barred by lapse of time according to the law of the requesting or requested Party; or

(*c*) (i) the offense for which extradition is requested is regarded by the requested Party as one of a political character; or

(ii) the person sought proves that the request for his extradition has in fact been made with a view to try or punish him for an offense of a political character.

(2) Extradition may be refused on any other ground which is specified by the law of the requested Party.

ARTICLE VI

If the person sought should be under examination or under punishment in the territory of the requested Party for any other offense, his extradition shall be deferred until the conclusion of the trial and the full execution of any punishment [*7] awarded to him.

ARTICLE VII

(1) The request for extradition shall be made through the diplomatic channel, except as otherwise provided in Article XV.

(2) The request shall be accompanied by:

(*a*) a description of the person sought, his nationality, if known, and any other information which would help to establish his identity;

(*b*) a statement of the facts of the offense for which extradition is requested;

(*c*) the text, if any, of the law

(i) defining that offense;

(ii) prescribing the maximum punishment for that offense; and

(iii) imposing any time limit on the institution of proceedings for that offense;

and

(*d*) (i) where the requesting Party is the United Kingdom, a statement of the legal provisions which establish the extraditable character of the offense for which extradition is requested under the relevant law, being the law of the United Kingdom or other territory to which this Treaty applies by virtue of sub-paragraph (1)(*a*) of Article II;

(ii) where the requesting Party is the United States of America, a statement that the offense for which extradition is requested, constitutes a felony under the law of the United States of America.

[*8]

(3) If the request relates to an accused person, it must also be accompanied by a warrant of arrest issued by a judge, magistrate or other competent authority in the territory of the requesting Party and by such evidence as, according to the law of the requested Party, would justify his committal for trial if the offense had been committed in the territory of the requested Party, including evidence that the person requested is the person to whom the warrant of arrest refers.

(4) If the request relates to a convicted person, it must be accompanied by a certificate or the judgment of conviction imposed in the territory of the requesting Party and by evidence that the person requested is the person to whom the conviction refers and, if the person was sentenced, by evidence of the sentence imposed and a statement showing to what extent the sentence has not been carried out.

(5) The warrant of arrest, or the judicial document establishing the existence of the conviction, and any deposition or statement or other evidence given on oath or affirmed, or any certified copy thereof shall be received in evidence in any proceedings for extradition:

(*a*) if it is authenticated in the case [*9] of a warrant by being signed, or in the case of any other original document by being certified, by a judge, magistrate or other competent authority of the requesting Party, or in the case of a copy by being so certified to be a true copy of the original; and

(*b*) where the requesting Party is the United Kingdom, by being sealed with the official seal of the appropriate Minister and certified by the principal diplomatic or consular officer of the United States of America in the United Kingdom; and where the requesting Party is the United States of America, by being sealed with the official seal of the Department of State for the Secretary of State; or

(*c*) if it is authenticated in such other manner as may be permitted by the law of the requested Party.

ARTICLE VIII

(1) In urgent cases the person sought may, in accordance with the law of the requested Party, be provisionally arrested on application through the diplomatic channel by the competent authorities of the requesting Party. The application shall contain an indication of intention to request the extradition of the person sought and a statement of the existence of a warrant of arrest or a conviction against that person, [*10] and, if available, a description of the person sought, and such further information, if any, as would be necessary to justify the issue of a warrant of arrest had the offense been committed, or the person sought been convicted, in the territory of the requested Party.

(2) A person arrested upon such an application shall be set at liberty upon the expiration of forty-five days from the date of his arrest if a request for his extradition shall not have been received. This provision shall not prevent the institution of further proceedings for the extradition of the person sought if a request is subsequently received.

ARTICLE IX

(1) Extradition shall be granted only if the evidence be found sufficient according to the law of the requested Party either to justify the committal for trial of the person sought if the offense of which he is accused had been committed in

the territory of the requested Party or to prove that he is the identical person convicted by the courts of the requesting Party.

(2) If the requested Party requires additional evidence or information to enable a decision to be taken on the request for extradition, such evidence or information shall be submitted within such [*11] time as that Party shall require.

### ARTICLE X

If the extradition of a person is requested concurrently by one of the Contracting Parties and by another State or States, either for the same offense or for different offenses, the requested Party shall make its decision in so far as its law allows, having regard to all the circumstances, including the provisions in this regard in any Agreements in force between the requested Party and the requesting States, the relative seriousness and place of commission of the offenses, the respective dates of the requests, the nationality of the person sought and the possibility of subsequent extradition to another State.

### ARTICLE XI

(1) The requested Party shall promptly communicate to the requesting Party through the diplomatic channel the decision on the request for extradition.

(2) If a warrant or order for the extradition of a person sought has been issued by the competent authority and he is not removed from the territory of the requested Party within such time as may be required under the law of that Party, he may be set at liberty and the requested Party may subsequently refuse to extradite him for the same offense.

### ARTICLE XII

(1) A person extradited [*12] shall not be detained or proceeded against in the territory of the requesting Party for any offense other than an extraditable offense established by the facts in respect of which his extradition has been granted, or on account of any other matters, nor be extradited by that Party to a third State --

(a) until after he has returned to the territory of the requested Party; or
(b) until the expiration of thirty days after he has been free to return to the territory of the requested Party.

(2) The provisions of paragraph (1) of this Article shall not apply to offenses committed, or matters arising, after the extradition.

### ARTICLE XIII

When a request for extradition is granted, the requested Party shall, so far as its law allows and subject to such conditions as it may impose having regard to the rights of other claimants, furnish the requesting Party with all sums of money and other articles --

(a) which may serve as proof of the offense to which the request relates; or

(b) which may have been acquired by the person sought as a result of the offense and are in his possession.

### ARTICLE XIV

(1) The requested Party shall make all necessary arrangements for and [*13] meet the cost of the representation of the requesting Party in any proceedings arising out of a request for extradition.

(2) Expenses relating to the transportation of a person sought shall be paid by the requesting Party. No pecuniary claim arising out of the arrest, detention, examination and surrender of a person sought under the provisions of this Treaty shall be made by the requested Party against the requesting Party.

### ARTICLE XV

A request on the part of the Government of the United States of America for the extradition of an offender who is found in any of the territories to which this Treaty has been extended in accordance with paragraph (1) of Article II may

be made to the Governor or other competent authority of that territory, who may take the decision himself or refer the matter to the Government of the United Kingdom for their decision.

ARTICLE XVI

(1) This Treaty shall be ratified, and the instruments of ratification shall be exchanged at Washington as soon as possible. It shall come into force three months after the date of the exchange of instruments of ratification. n1

n1 Jan. 21, 1977.

[*14]

(2) This Treaty shall apply to any offense listed in the annexed Schedule committed before or after this Treaty enters into force, provided that extradition shall not be granted for an offense committed before this Treaty enters into force which was not an offense under the laws of both Contracting Parties at the time of its commission.

(3) On the entry into force of this Treaty the provisions of the Extradition Treaty of December 22, 1931 n2 shall cease to have effect as between the United Kingdom and the United States of America.

n2 TS 849; 47 Stat. 2122.

(4) Either of the Contracting Parties may terminate this Treaty at any time by giving notice to the other through the diplomatic channel. In that event the Treaty shall cease to have effect six months after the receipt of the notice.

In witness whereof the undersigned, being duly authorized thereto by their respective Governments, have signed this Treaty.

Done in duplicate at London in the English language this 8th day of June, 1972.

PROTOCOL OF SIGNATURE

At the [*15] time of signing this day the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland (hereinafter referred to as "the Treaty"), the undersigned have agreed as follows:

(1) Article III of the Treaty shall permit the Government of the United States of America to obtain the extradition of a person for an offense to which the Treaty relates when United States Federal jurisdiction is based upon interstate transport or transportation or the use of the mails or of interstate facilities, these aspects being jurisdictional only.

(2) This Protocol of Signature shall form an integral part of the Treaty.

In witness whereof the undersigned, being duly authorized thereto by their respective Governments, have signed this Protocol.

Done in duplicate at London in the English language this 8th day of June, 1972.

[EXCHANGES OF NOTES]

FOREIGN AND COMMONWEALTH OFFICE LONDON S.W. 1

8 JUNE 1972

GNX 2/304/1

His Excellency The Honourable WALTER H ANNENBERG etc etc etc *Grosvenor Square London W1A 1AE*

YOUR EXCELLENCY

I have the honour to refer to Article 16, paragraph (2), of the Extradition Treaty between [*16] our two Governments signed today.

It is the understanding of the Government of the United Kingdom that, without prior concurrence by both Governments, no application will be made for the extradition of a person for an offence committed before the Treaty signed today enters into force if extradition of such person for that offence, or any other offence, has previously been denied because the offence was not included in the Extradition Treaty between the United Kingdom and the United States, signed at London on 22 December, 1931.

I would appreciate receiving confirmation that the foregoing is also the understanding of the Government of the United States.

I have the honour to be with the highest consideration Your Excellency's obedient Servant

EMBASSY OF THE UNITED STATES OF AMERICA LONDON

JUNE 8, 1972

EXCELLENCY:

I have the honor to acknowledge receipt of your note of June 8, 1972 which reads as follows:

"I have the honour to refer to Article 16, paragraph (2), of the Extradition Treaty between our two Governments signed today.

"It is the understanding of the Government of the United Kingdom that, without prior concurrence by both Governments, no application will be made for the [*17] extradition of a person for an offence committed before the Treaty signed today enters into force if extradition of such person for that offence, or any other offence, has previously been denied because the offence was not included in the Extradition Treaty between the United Kingdom and the United States, signed at London on 22 December, 1931.

"I would appreciate receiving confirmation that the foregoing is also the understanding of the Government of the United States."

I confirm that the foregoing is also the understanding of the Government of the United States.

Accept, Excellency, the renewed assurances of my highest consideration.

BRITISH EMBASSY, Washington, D.C.

21 OCTOBER 1976

SIR

I have the honour to refer to the Extradition Treaty between the Government of the United Kingdom of Great Britain and Northern Ireland and the Government of the United States of America signed at London on 8 June 1972. In accordance with the provisions of paragraph (1)(a) of Article II I have the honour to propose that, with effect from the date of entry into force of the Treaty, the application of the Treaty shall extend to those territories listed in the Annex to this Note for the international [*18] relations of which the United Kingdom is responsible.

If the foregoing proposal is acceptable to the Government of the United States of America, I have the honour to propose that this Note, together with its Annex and Your Excellency's reply in that sense, shall constitute an Agreement between the two Governments in this matter.

I avail myself of this opportunity to renew to you, Sir, the assurance of my highest consideration.

DEPARTMENT OF STATE WASHINGTON

OCTOBER 21, 1976

EXCELLENCY:

I have the honor to acknowledge receipt of your note of October 21, 1976, which reads as follows:

"Sir

I have the honour to refer to the Extradition Treaty between the Government of the United Kingdom of Great Britain and Northern Ireland and the Government of the United States of America signed at London on 8 June 1972. In accordance with the provisions of paragraph (1)(a) of Article II I have the honour to propose that, with effect from the date of entry into force of the Treaty, the application of the Treaty shall extend to those territories listed in the Annex to this Note for the international relations of which the United Kingdom is responsible.

If the foregoing proposal is acceptable to [*19]  the Government of the United States of America, I have the honour to propose that this Note, together with its Annex and Your Excellency's reply in that sense, shall constitute an Agreement between the two Governments in this matter.

I avail myself of this opportunity to renew to you, Sir, the assurance of my highest consideration.

## ANNEX

Antigua
Belize
Bermuda
British Indian Ocean Territory
British Virgin Islands
Cayman Islands
Dominica
Falkland Islands and Dependencies
Gibraltar
Gilbert Islands
Hong Kong
Montserrat
Pitcairn, Henderson, Ducie and Oeno Islands
St Christopher, Nevis and Anguilla
St Helena and Dependencies
St Lucia
St Vincent
Solomon Islands
Sovereign Base Areas of Akrotiri and Dhekelia in the Island of Cyprus
Turks and Caicos Islands
Tuvalu"

I have the honor to inform Your Excellency that the foregoing is acceptable and reflects correctly the understanding of the Government of the United States of America, and that Your Excellency's note and this note in reply concurring therein, together with its Annex, constitute an agreement between our two Governments concerning the Extradition Treaty between the Government of the United Kingdom of Great Britain and [*20]  Northern Ireland and the Government of the United States of America signed at London on 8 June 1972.

Accept, Excellency, the renewed assurances of my highest consideration.

## SIGNATORIES:
[SEAL]

GERALD R. FORD

By the President: HENRY A. KISSINGER *Secretary of State*

For the Government of the United States of America:

W. H. Annenberg

For the Government of the United Kingdom of Great Britain and Northern Ireland:

Anthony Kershaw

For the Government of the United States of America:

For the Government of the United Kingdom of Great Britain and Northern Ireland:

(For the Secretary of State) R. V. RICHARDSON

WALTER ANNENBERG

THE SECRETARY OF STATE FOR FOREIGN & COMMONWEALTH AFFAIRS FOREIGN OFFICE *London, S.W.1.*

PETER RAMSBOTHAM

THE HONORABLE HENRY A KISSINGER *Secretary of State of the United States of America Washington DC*

For the Secretary of State: CHARLES W ROBINSON

HIS EXCELLENCY THE HONORABLE SIR PETER E. RAMSBOTHAM, G.C.V.O., K.C.M.G., *British Ambassador*

**APPENDICES:**
SCHEDULE

**List of offenses referred to in Article III**

1. Murder; attempt to murder, including assault with intent to murder.
2. Manslaughter.
3. Maliciously wounding or inflicting grievous bodily harm.
4. Unlawful throwing [*21] or application of any corrosive or injurious substance upon the person of another.
5. Rape; unlawful sexual intercourse with a female; indecent assault.
6. Gross indecency or unlawful sexual acts with a child under the age of fourteen years.
7. Procuring a woman or young person for immoral purposes; living on the earnings of prostitution.
8. Unlawfully administering drugs or using instruments with intent to procure the miscarriage of a woman.
9. Bigamy.
10. Kidnapping, abduction, false imprisonment.
11. Neglecting, ill-treating, abandoning, exposing or stealing a child.
12. An offense against the law relating to narcotic drugs, cannabis sativa L, hallucinogenic drugs, cocaine and its derivatives, and other dangerous drugs.
13. Theft; larceny; embezzlement.
14. Robbery; assault with intent to rob.
15. Burglary or housebreaking or shopbreaking.
16. Receiving or otherwise handling any goods, money, valuable securities or other property, knowing the same to have been stolen or unlawfully obtained.
17. Obtaining property, money or valuable securities by false pretenses or other form of deception.
18. Blackmail or extortion.
19. False accounting.
20. Fraud or false statements by company [*22] directors and other officers.
21. An offense against the bankruptcy laws.
22. An offense relating to counterfeiting or forgery.
23. Bribery, including soliciting, offering or accepting bribes.
24. Perjury; subornation of perjury.
25. Arson.
26. Malicious damage to property.
27. Any malicious act done with intent to endanger the safety of persons travelling or being upon a railway.
28. Piracy, involving ships or aircraft, according to international law.
29. Unlawful seizure of an aircraft.

**ANNEX**

Antigua
Belize
Bermuda
British Indian Ocean Territory
British Virgin Islands
Cayman Islands
Dominica
Falkland Islands and Dependencies
Gibraltar
Gilbert Islands
Hong Kong
Montserrat
Pitcairn, Henderson, Ducie and Oeno Islands
St Christopher, Nevis and Anguilla
St Helena and Dependencies
St Lucia
St Vincent
Solomon Islands
Sovereign Base Areas of Akrotiri and Dhekelia in the Island of Cyprus
Turks and Caicos Islands
Tuvalu

UNITED KINGDOM

SUPPLEMENTARY EXTRADITION TREATY WITH THE UNITED KINGDOM

TREATY DOC. 99-8

*1985 U.S.T. LEXIS 225*

June 25, 1985, Date-Signed

**STATUS:**

 [*1]  PENDING: July 17, 1985. Treaty was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for use of the Senate

MESSAGE FROM THE PRESIDENT OF THE UNITED STATES

TRANSMITTING THE SUPPLEMENTARY EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND, WITH ANNEX, SIGNED AT WASHINGTON ON JUNE 25, 1985

**TEXT:**
99TH CONGRESS

  *1st Session*

  SENATE

  **LETTER OF TRANSMITTAL**

  THE WHITE HOUSE, *July 17, 1985.*

*To the Senate of the United States:*

    With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Supplementary Extradition Treaty between the United States of America and the United Kingdom, with annex, signed at Washington on June 25, 1985.

    I transmit also, for the information of the Senate, the report of the Department of State with respect to the Supplementary Treaty.

    The Supplementary Treaty adds to and amends the Extradition Treaty between the United States and the United Kingdom, signed at London on June 8, 1972.

    It represents a significant step in improving law enforcement cooperation and combatting [*2]  terrorism, by excluding from the scope of the political offense exception serious offenses typically committed by terrorists, e.g., aircraft hijacking and sabotage, crime against diplomats, hostage taking, and other heinous acts such as murder, manslaughter, malicious assault, and certain serious offenses involving firearms, explosives, and damage to property.

    The Supplementary Treaty, in addition to narrowing the application of the political offense exception to extradition, will also help improve implementation of the current Extradition Treaty in several other respects. I recommend that the Senate give early and favorable consideration to the Supplementary Treaty and give its advice and consent to ratification.

  RONALD REAGAN.

  **LETTER OF SUBMITTAL**

  DEPARTMENT OF STATE,

  *Washington, July 3, 1985.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Supplementary Extradition Treaty between the United States of America and the United Kingdom of Great Britain and Northern Ireland, with annex, signed at Washington on June 25, 1985. I recommend that the Supplementary Treaty be transmitted to the Senate for advice and consent to ratification.  [*3]

The Supplementary Treaty supplements and amends the Extradition Treaty between the United States and the United Kingdom, signed at London on June 8, 1972 *(28 U.S.T. 227; TIAS 8468)*. The Supplementary Extradition Treaty would exclude specified crimes of violence, typically committed by terrorists, from the scope of the political offense exception to extradition. It therefore represents a significant step to improve law enforcement cooperation and counter the threat of international terrorism and other crimes of violence.

Article 1 of the Supplementary Treaty effectively limits the scope of Article V, paragraph (1)(c)(i) of the current Extradition Treaty--the political offense exception--by listing the crimes which shall not be regarded as offenses of a political character, namely: aircraft hijacking; aircraft sabotage; crimes against internationally protected persons, including diplomats; hostage taking; as well as murder; manslaughter; malicious assault; kidnapping; and specified firearms, explosives, and serious property damage offenses.

Article 2 of the Supplementary Treaty amends Article V, paragraph (1)(b) of the current Extradition Treaty by providing [*4] that extradition shall be denied if prosecution would be barred by the statute of limitations of the requesting State. The current treaty provision permits the statute of limitations of either the requesting or requested State to apply.

Article 3 of the Supplementary Treaty amends Article VIII, paragraph (2) of the current Extradition Treaty by providing that the requesting State shall have as much as 60 days following provisional arrest to submit evidence in support of an extradition request, and that if by that time such evidence has not been submitted the person arrested shall be set at liberty. The current treaty allows only 45 days.

Article 4 of the Supplementary Treaty provides that its provisions shall apply to any offense committed before or after the entry into force of the Supplementary Treaty, but shall not apply to an offense committed before the Supplementary Treaty enters into force if the offense in question was not an offense under the laws of both Contracting Parties at the time of its commission.

Article 5 of the Supplementary Treaty provides that it shall form an integral part of the current Extradition Treaty and sets forth its territorial application for the United [*5]  States and the United Kingdom, respectively.

Article 6 of the Supplementary Treaty provides that it shall enter into force upon the exchange of instruments of ratification and shall be subject to termination in the same manner as the current Extradition Treaty.

The Department of Justice joins the Department of State in favoring transmission of this Supplementary Treaty to the Senate at the earliest possible date.

Respectfully submitted,

GEORGE P. SHULTZ.

SUPPLEMENTARY TREATY CONCERNING THE EXTRADITION TREATY BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF THE UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND, SIGNED AT LONDON ON 8 JUNE 1972

The Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland;

Desiring to make more effective the Extradition Treaty between the Contracting Parties, signed at London on 8 June 1972 (hereinafter referred to as "the Extradition Treaty");

Have resolved to conclude a Supplementary Treaty and have agreed as follows:

ARTICLE 1

For the purposes of the Extradition Treaty, none of the following offenses shall be regarded as an offense of a political character:  [*6]

(a) an offense within the scope of the Convention for the Suppression of Unlawful Seizure of Aircraft, opened for signature at The Hague on 16 December 1970;

(b) an offense within the scope of the Convention for the Suppression of Unlawful Acts against the Safety of Civil Aviation, opened for signature at Montreal on 23 September 1971;

(c) an offense within the scope of the Convention on the Prevention and Punishment of Crimes against Internationally Protected Persons, including Diplomatic Agents, opened for signature at New York on 14 December 1973;

(d) an offense within the scope of the International Convention against the Taking of Hostages, opened for signature at New York on 18 December 1979;

(e) murder;

(f) manslaughter;

(g) maliciously wounding or inflicting grievous bodily harm;

(h) kidnapping, abduction, false imprisonment or unlawful detention, including the taking of a hostage;

(i) the following offenses relating to explosives:

(1) the causing of an explosion likely to endanger life or cause serious damage to property; or

(2) conspiracy to cause such an explosion; or

(3) the making of possession of an explosive substance by a person who intends either himself or through [*7] another person to endanger life or cause serious damage to property;

(j) the following offenses relating to firearms or ammunition:

(1) the possession of a firearm or ammunition by a person who intends either himself or through another person to endanger life; or

(2) the use of a firearm by a person with intent to resist or prevent the arrest or detention of himself or another person;

(k) damaging property with intent to endanger life or with reckless disregard as to whether the life of another would thereby be endangered;

(l) an attempt to commit any of the foregoing offenses.

ARTICLE 2

Article V, paragraph (1)(b) of the Extradition Treaty is amended to read as follows:

"(b) the prosecution for the offense for which extradition is requested has become barred by lapse of time according to the law of the requesting Party; or"

ARTICLE 3

Article VIII, paragraph (2) of the Extradition Treaty is amended to read as follows:

"(2) A person arrested upon such an application shall be set at liberty upon the expiration of sixty days from the date of his arrest if a request for his extradition shall not have been received. This provision shall not prevent the institution of further [*8] proceedings for the extradition of the person sought if a request for extradition is subsequently received."

ARTICLE 4

This Supplementary Treaty shall apply to any offense committed before or after this Supplementary Treaty enters into force, provided that this Supplementary Treaty shall not apply to an offense committed before this Supplementary Treaty enters into force which was not an offense under the laws of both Contracting Parties at the time of its commission.

ARTICLE 5

This Supplementary Treaty shall form an integral part of the Extradition Treaty and shall apply:

(a) in relation to the United Kingdom: to Great Britain and Northern Ireland, the Channel Islands, the Isle of Man and the territories for whose international relations the United Kingdom is responsible which are listed in the Annex to this Supplementary Treaty;

(b) to the United States of America;

and references to the territory of a Contracting Party shall be construed accordingly.

ARTICLE 6

This Supplementary Treaty shall be subject to ratification and the instruments of ratification shall be exchanged at London as soon as possible. It shall enter into force upon the exchange of instruments of ratification. [*9] It shall be subject to termination in the same manner as the Extradition Treaty.

IN WITNESS WHEREOF, the undersigned, being duly authorized thereto by their respective Governments, have signed this Supplementary Treaty.

DONE in duplicate at Washington this twenty-fifth day of June, 1985.

FOR THE GOVERNMENT OF THE UNITED STATES OF AMERICA:

FOR THE GOVERNMENT OF THE UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND:

**APPENDICES:**
ANNEX

Anguilla
Bermuda
British Indian Ocean Territory
British Virgin Islands
Cayman Islands
Falkland Islands
Falkland Islands Dependencies
Gibraltar
Hong Kong
Montserrat
Pitcairn, Henderson, Ducie and Oeno Islands
St. Helena
St. Helena Dependencies
The Sovereign Base Areas of Akrotiri and Dhekelia in the Island of Cyprus
Turks and Caicos Islands

**EXHIBIT B**



## BIOGRAPHICAL INFORMATION ON FUGITIVE

| | |
|---|---|
| Name: | JAHMEL GLEN BLAKENEY |
| Alias: | Jr. Stocks |
| Date of Birth: | 27th September 1981 |
| Place of Birth: | United States of America |
| Nationality: | Dual Citizenship Bermuda/USA |
| Address in Bermuda: | 2 Stovell Bay Road |
| | Pembroke, |
| | Bermuda |
| | |
| Height: | 5 foot 9 inches |
| Weight: | Unknown |
| Build: | Medium |