**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

IN THE MATTER OF THE EXTRADITION OF          <u>MEMORANDUM AND ORDER</u>
JAHMEL GLEN BLAKENEY,                                      10-MJ-635 (SMG)

--------------------------------------------------------X
**Gold, S., U.S.M.J.:**

## <u>Introduction</u>

Petitioner, United States of America, acting on behalf of the government of Bermuda,

seeks the extradition to Bermuda, an overseas territory of the United Kingdom, of Jahmel Glen

Blakeney, a citizen of the United States and Bermuda ("Blakeney" or "defendant"). This request

is made pursuant to 18 U.S.C. § 3184 and the Extradition Treaty Between the Government of the

United States of America and the Government of the United Kingdom of Great Britain and

Northern Ireland. *See* Compl. Ex. A. Blakeney is wanted in Bermuda on charges of attempted

murder relating to a shooting of two individuals. Defendant opposes extradition, arguing a lack

of probable cause to believe that he committed the charged crimes. Defendant's Motion to

Dismiss ("Def. Mem."), Docket Entry 9. More specifically, Blakeney contends that the evidence

fails to establish that he was a principal in the attempted murders, as opposed to merely an

accessory after the fact. *Id*.

Neither side requested an evidentiary hearing. Instead, they seek a ruling based on the

papers submitted. For the reasons stated below, I conclude that the government's evidence

establishes probable cause and that extradition is warranted.

## <u>The Treaty</u>

In support of its request for extradition, the government has submitted a 1977 Extradition

Treaty and a 1986 Supplementary Extradition Treaty (collectively, the "Treaty").[1]  Compl. Ex. A.

During a telephone conference held on October 6, 2010, I inquired about the applicability of a

2003 Extradition Treaty with Great Britain and Northern Ireland.  *See* S. Treaty Doc. No. 108-23,

*available at* 2003 WL 23527406.  By letter dated October 12, 2010, the government states, and

defendant agrees, that "Bermuda is not a party to" the more recent treaty.[2]  Docket Entries 12, 13.

Although the government's response is conclusory, the differences in the two treaties are

inapplicable for the most part here and applying either treaty would lead to the same result.[3]

The Treaty provides for extradition upon a showing that the requested individual has been

charged with or convicted of an extraditable offense and of probable cause to support the charge.

Treaty Arts. III, IX.  The defense raises no arguments concerning any technical defects related to

the extradition request.  *See* Def. Mem.  The only issue to be decided, then, is whether the

government of Bermuda has presented sufficient evidence for a finding of probable cause.

---

[1] The government has also submitted a declaration of Cameron Holland, an Attorney Advisor in the Office of the Legal Advisor for the Department of State, who states that the 1977 Treaty and the Supplementary Treaty of 1986 are the applicable treaties for extradition between the United States and Bermuda.  Holland Decl. ¶ 3.

[2] The 2003 Treaty states that it applies to "any territory for whose international relations the United Kingdom is responsible and to which this agreement has been extended by agreement of the Parties."  Art. 22(2).  The 2003 Treaty also provides, however, that the 1977 Treaty remains in force "until such time as the provisions of this Treaty have been extended to such a territory under Article 22(2).  Art. 23(4).  I therefore presume that the United States and the United Kingdom failed to agree to extend the application of the 2003 Treaty to Bermuda.

[3] For example, the Treaty includes a Schedule of extraditable offenses, which includes murder and attempted murder; the 2003 Treaty does not provide a list of extraditable offenses but rather defines an extraditable offense as one where the offense is punishable by at least a year of imprisonment in both countries.  2003 Treaty Art. 2.  Accordingly, the charges against Blakeney are extraditable offenses under both treaties.

<u>Facts</u>[4]

At approximately 9:30 p.m. on November 13, 2009, Blakeney and his girlfriend were at the Southside Cinema, a movie theater in St. George, Bermuda. Clarke Aff. ¶ 43. Blakeney is a member of the Parkside gang. *Id*. ¶ 33. At the movie theater, defendant saw Shakai Minors, one of the victims, who is a known member of a rival gang, 42nd Crew. *Id*. ¶¶ 33, 43. In November of 2009, the gangs were in the midst of a violent feud involving multiple shootings resulting in deaths and serious injuries. *Id*. ¶ 34.

After seeing Minors, Blakeney contacted Sanchey Grant, his co-defendant on the charges in Bermuda. *Id*. ¶ 46. Records indicate that Blakeney and Grant spoke by telephone six times between 9:35 and the time of the shooting. *Id*. After calling Grant, Blakeney drove his girlfriend home, where Grant and Blakeney met at approximately 10:00 p.m. *Id*. ¶¶ 43, 44. During the drive home, Blakeney's girlfriend, Jalicia Crockwell, sent several text messages to Shaleek Daniels, the girlfriend of another Parkside gang member, in which she suggested that Blakeney was going to meet up with his fellow gang members and do something to a 42nd Crew member he saw at the movie theater. *Id*. ¶ 44. Excerpts from the text messages read as follows:

> Crockwell: "Well um on my way back town . . . pissed n the movie
> aint even sold out" (omission in original)
> . . .
> Crockwell: "He saw some guy n just ran out . . ."
> Daniels: ". . . he saw somebody in thur and ran out, see these lot
> cnt go places like dat by themselves  . . . who was the guy?"

---

[4] The factual allegations are set forth in an Affidavit made by Cindy Estelle Clarke, a Senior Crown Counselor (Specialist) in the Department of Public Prosecutions in Bermuda ("Clarke Aff."). In her affidavit, Clarke summarizes the statements of the victims and eyewitnesses and provides summaries of the forensic evidence implicating Blakeney and Grant in the attempted murders. No underlying documents were submitted; rather, the affidavit is the sole proffer made by Bermuda in support of its application for the extradition of Blakeney.

> (second omission in original)
> Crockwell: "IDK [I don't know] but d guy was with his girl now
> h[e']s . . . speedn back town 2 get them boys"
> . . .
> Crockwell: ". . . he called some . . . guy . . ."
> Daniels: "Keep his ass inlide girl, it aint even worth it, his all the way
> down the country and U lots back town"
> Crockwell: "Back town already . . . his rushin back to fck dis shit"
> Daniels: "Keep him in Lic girl . . ."
> . . .
> Daniels: "So who was the guy?"
> Crockwell: "Idk girl n his ass is gne get them boys 2 go b[a]ck down
> there[.] his from 42[,] that's all I kno[w]."
> . . .

Clarke Aff. ¶ 44.

Minors and Renee Kuchler, the second victim, left the theater at approximately 11:30

p.m. *Id*. ¶ 13. While they were seated in Minors' car, "a lone man approached the vehicle, stood

immediately outside the driver's door and discharged several shots from a hand gun." *Id*. Both

Minors and Kuchler suffered multiple gun shot wounds but survived. *Id*. ¶ 42.

The victims and witnesses described the shooter as wearing a baseball hat, scarf, and

jacket. *Id*. ¶¶ 41, 83(k). They observed the shooter run behind a nearby church; shortly

thereafter, a black car was seen coming from behind the church. *Id*.

The police instituted a road block near the area of the shooting, blocking off the only road

affording access to or from the crime scene. *Id*. ¶¶ 16, 47. At approximately 2:00 a.m. on

November 14, 2009, a black Kia Sportage approached the road block but failed to heed

instructions to stop, instead accelerating away from the police. *Id*. ¶¶ 47, 48. Police pursued the

vehicle, causing it to stop a short distance away. *Id*. ¶ 48. Blakeney was the driver of the vehicle

and Grant was in the passenger seat. *Id*. ¶ 51. Both men were arrested. *Id*. ¶ 52.

Suspecting that Blakeney or Grant might have thrown a gun or other incriminating evidence from the window of the car, the police searched the area along the road where Blakeney was driving. Although they did not discover anything at first, at 7:00 a.m., the police recovered a 9mm Beretta pistol near the road where Blakeney had been driving. *Id.* ¶ 53. A ballistics analysis established that the bullets removed from the victims were fired from the recovered Beretta. *Id.* ¶¶ 73, 74. In addition, the hands of both Blakeney and Grant tested positive for "component particles consistent with Gun Shot residue." *Id.* ¶¶ 56, 57. There were also component particles consistent with gun shot residue on Grant's jock strap, on various items seized from Blakeney's car, including a jacket and a baseball cap, and on various areas in the car, including the steering wheel and hand brake.[5] *Id.* ¶¶ 58-72.

Grant has remained in custody since his arrest, while Blakeney was released on bail. Clarke Aff. ¶ 20. Blakeney was required to surrender on December 12, 2009, but failed to appear. *Id.* A police investigation revealed that Blakeney fled Bermuda for the United States on November 30, 2009. *Id.* Defendant Blakeney was arrested in the United States pursuant to a warrant issued on June 7, 2010 and first appeared before the court on June 10, 2010. Docket Entries 2, 4. During a status conference held on August 25, 2010, Blakeney declined to waive extradition. Docket Entry 8.

## Discussion

### I. Scope of Extradition Proceedings

The scope of any extradition proceeding is narrow and rests within the sound discretion

---

[5] The jacket and a glove found in the car tested positive for component particles "unique" to gun shot residue. Clarke Aff. ¶ 83(z-aa). In addition, Grant's DNA is on the baseball cap. Clarke Aff. ¶ 61.

of the presiding judge.  *Jhirad v. Ferrandina*, 536 F.2d 478, 484 (2d Cir. 1976).  *See also*

*Charlton v. Kelly*, 229 U.S. 447, 461 (1913).  The court's role is limited to determining whether

the requesting country has presented sufficient evidence to warrant a finding of probable cause to

believe that the requested individual has committed the offense charged.  *See Charlton*, 229 U.S.

at 449.  "An extradition hearing is not the occasion for an adjudication of guilt or innocence."

*Melia v. U.S.*, 667 F.2d 300, 302 (2d Cir. 1981).

The rules of evidence that govern at trial are not applicable in extradition proceedings.

Hearsay statements of witnesses summarized in the affidavit of a foreign official are admissible

and may be sufficient to support a finding of probable cause.[6]  *See Simmons v. Braun*, 627 F.2d

635, 636 (2d Cir. 1980); *Afanasjev v. Hurlburt*, 418 F.3d 1159, 1162 (11th Cir. 2005) (affirming

probable cause finding based on unsworn indictment summarizing witness statements); *Bovio v.

U.S.*, 989 F.2d 255, 259-61 (7th Cir. 1993) (affirming probable cause finding based on

investigator's affidavit); *Emami v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 834 F.2d 1444, 1450-51

(9th Cir. 1987) (affirming probable cause finding to extradite for insurance fraud based on

prosecutor's sworn affidavit); *In re Extradition of Skaftouros*, 643 F. Supp. 2d 535, 548

(S.D.N.Y. 2009); *In re Ryan*, 360 F. Supp. 270, 273 (E.D.N.Y. 1973) ("A determination of

probable cause in an extradition proceeding may rest entirely upon hearsay.").  Indeed, the

Supreme Court has recognized that a court may order extradition based upon "unsworn

statements of absent witnesses."  *Collins v. Loisel*, 259 U.S. 309, 317 (1922).  Nonetheless, a

court must assess the evidence and examine the requesting country's submissions closely to

---

[6] Documents must be properly authenticated to be admissible in an extradition hearing. 18 U.S.C. § 3190.  The documents here have been properly certified.

ensure that any hearsay bears indicia of reliability sufficient to establish probable cause. *Gill v. Imundi*, 747 F. Supp. 1028, 1041 (S.D.N.Y. 1990) (recognizing that an extradition court has the "authority and discretion to go beyond the face of the government's affidavits for purposes of determining credibility or reliability"). *See also In re Extradition of Singh*, 170 F. Supp. 2d 982, 1023 (E.D. Cal. 2001) ("[T]he extradition judge makes credibility determinations as to the competence of the evidence supporting probable cause."); *U.S. v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1366 n.7 (S.D. Fla. 1999) ("Where a request for extradition is supported by an affidavit, recital of sufficient underlying facts is necessary if a magistrate judge is going to perform his judicial functions and not act merely as a rubber stamp.").

Courts have denied extradition where the requesting country's submissions were merely conclusory or otherwise unreliable. *See*, *e.g.*, *In re Ribaudo*, 2004 WL 213021, at *5-7 (S.D.N.Y. Feb. 3, 2004); *In re Extradition of Strunk*, 293 F. Supp. 2d 1117, 1139-40 (E.D. Cal. 2003) (noting that "[w]hile the Philippines is not required to submit all their evidence against the extraditee with a request for extradition, the lack of probable cause connecting Strunk to the crime is highlighted by the fact that corroborating evidence which could have bolstered the case is missing"); *Fernandez Morris*, 99 F. Supp. 2d at 1368-69. Although Bermuda is not required to produce all of its evidence against the defendant at the extradition hearing, *see Austin v. Healey*, 5 F.3d 598, 605 (2d Cir. 1993), it must provide proof, with sufficient indicia of reliability, to establish probable cause to believe that Blakeney committed the crimes charged. *See Afanasjev*, 418 F.3d at 1162 (rejecting challenge to extradition where foreign government submitted one hundred six page indictment that, although unsworn and comprised largely of hearsay, provided a "detailed account of [defendants'] alleged criminal activities . . . [and]

summarized statements made by victims, employees . . ., and other witnesses"); *Emami*, 834 F.2d at 1447 (affirming extradition where foreign prosecutor's sworn affidavit included "fifty-two pages of detailed summaries of statements made by former employees and patients" of defendant); *Sacirbey v. Guccione*, 2006 WL 2585561 (S.D.N.Y. Sept. 7, 2006) (upholding decision to grant extradition where German government provided sworn affidavits of three individuals with firsthand knowledge of the defendant's alleged criminal activities), *rev'd on other grounds*, 589 F.3d 52 (2d Cir. 2009); *In re Extradition of Waters*, 2003 WL 23185666, at *4 (E.D.N.Y. Nov. 24, 2003) (granting extradition request based upon proffer that included sworn statements from the victims and a law enforcement memorandum with a detailed statement by a co-defendant).

## II.     Probable Cause

To support an extradition request, the prosecution need only meet the relatively modest burden of demonstrating probable cause.  In determining whether probable cause has been established, a court must consider the "totality-of-the-circumstances."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Here, the Treaty provides that "[p]robable cause means . . . there is sufficient evidence to warrant a man of reasonable caution in the belief that . . . an offense has been committed by the accused.[7]  Supp. Treaty Art. 2.  *See also Extradition of Atta*, 1988 WL 66866, at *4 (E.D.N.Y. June 17, 1988) (defining probable cause as "evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt") (internal quotation marks omitted).  Where the government relies on an

---

[7] The 2003 Treaty similarly provides that there must be "a reasonable basis to believe that the person sought committed the offense for which extradition is requested."  Treaty Art. 8(3)(c)

affidavit containing hearsay to establish probable cause, a court must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [it], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability" that the defendant has committed the crime charged. *Gates*, 462 U.S. at 238.

      A.     *The Attempted Murder Charges Against Blakeney*

The government of Bermuda charged Blakeney with two counts of attempted murder under Section 289(a) of the Criminal Code of Bermuda. Section 289(a) states that "[a]ny person who attempts unlawfully to cause the death of another person is guilty of a felony, and is liable to imprisonment for twenty years." Clarke Aff. Ex. 3. Under Bermudian law, an accessory to a crime may be charged as a principal.[8] Section 27 of the Criminal Code provides that "every person who does any act . . . for the purpose of enabling or aiding another person to commit the offence; . . . who aids another person in committing the offence; [or] who counsels or procures any other person to commit the offence" may be charged with actually committing it. *Id.*

In her affidavit, the prosecutor states that "the Crown must prove that an act was done which was more than merely preparatory to the offence of Murder" and "that there was intent to kill." Clarke Aff. ¶¶ 77, 78. Moreover, "the Crown must prove that the person charged with the offence either did the act or enabled, aided, abetted, counseled, or procured another person to commit the offence." *Id.* ¶ 79. The prosecutor contends that the evidence establishes probable cause to believe that Blakeney committed the offense of attempted murder either because he was

_____

[8] Under United States law, an aider or abettor may also be charged as a principal. 18 U.S.C. § 2.

the shooter or because he enabled, aided, abetted, counseled or procured the shooter to commit the offense. *Id.* ¶ 80.

     *B.     Analysis*

     The government's proof meets the limited threshold of probable cause and is sufficient to support extradition. First, the Bermudian prosecutor has provided a detailed statement of the evidentiary support for the facts alleged in her affidavit, identifying the witnesses and police officers who would testify in support of the prosecution's case and summarizing the testimony each would provide. *See* Clarke Aff. ¶¶ 8, 81-83; *see also* Facts *supra*. Moreover, the witness statements are persuasively corroborated. Ballistics reports indicated that the bullets removed from the victims were fired from the gun recovered on the road where Blakeney's car had recently driven, and that Blakeney and Grant both had "component particles consistent with gun shot residue" on their hands.[9] In addition, telephone records show several calls between Blakeney and Grant during the two hours that elapsed between the time Blakeney saw the victims and when they were shot. The text messages sent and received by Blakeney's girlfriend's, quoted in substantial part above, *see also* Clarke Aff. ¶ 44, provide additional corroborative evidence that is particularly incriminating.

     Defendant has not submitted any evidence in opposition to the government's proof. Defendant does, however, raise several questions about the reliability of the government's

---

     [9] Although the underlying forensic reports were not submitted in support of the application for extradition, the prosecutor's summaries of this evidence, presumably based on information provided to her by the Bermuda Police Service, appear reliable. *See* Clarke Aff. ¶¶ 81-83 (identifying the specific individuals who would provide testimony supporting the government's case). In her affidavit, the prosecutor notes that gun shot residue may be deposited in a variety of ways, including by discharging a firearm, being in close proximity of a discharging gun, or coming into contact with a surface that has gun shot residue on it. Clarke Aff. ¶ 83(nn).

evidence.  Def. Mem. 3-4.  For example, Blakeney notes that the government's proffer omits anything about the nature of the telephone calls between Blakeney and Grant and fails to explain why any such calls would be necessary if, as the government contends, Blakeney was working with Grant on the shootings.  Def. Mem. 3.  As another example, Blakeney complains about the vagueness of some of the prosecutor's statements – a "short while" after the shooting, a "black car" was seen.  *Id.*  Defendant's contentions, however, fail to raise any serious doubts about the reliability of the government's evidence or to negate the prosecutor's showing of probable cause to believe that Blakeney was involved in the shooting.[10]

Defendant also contends that the evidence, to the extent it is incriminating at all, suggests only that Blakeney was an accessory *after* the fact and not a principal of the attempted murders.  Defendant's argument, though, overlooks the evidence demonstrating his involvement *prior* to the shooting.  For example, telephone records indicate that Blakeney called Grant at 9:35 p.m. on the night of the shooting, which is approximately the time he first saw Minors at the movie theater.  Even more incriminating are the text messages exchanged by Blakeney's girlfriend and a girlfriend of another Parkside gang member from 9:41 p.m. to 10:08.  These text exchanges strongly suggest that Blakeney saw a rival gang member at the theater, that he called a friend, and that his girlfriend was concerned that he and his friend were likely going to do something to the rival gang member.  Thus, even if there is insufficient evidence to establish that Blakeney was the shooter, there is ample evidence "to warrant a man of reasonable caution in the belief that"

---

[10] I give no weight to the government's proffer that both Grant's and Blakeney's DNA are "possible contributors to the DNA mixture" found on the pistol grip since there is no analysis comparing the DNA found on the pistol with Blakeney's DNA.  Clarke Aff. ¶ 83(ss).  *See also* Def. Mem. 3-4 and n.3.

Blakeney, enabled, aided, counseled or procured Grant to shoot the victims. The evidence establishes probable cause to believe that Blakeney and Grant shared a common intent and acted together in the shootings of Minors and Kuchler. At a minimum, the evidence strongly indicates that Blakeney told Grant where to find Minors, knowing that Grant intended to harm Minors.

For all these reasons, I conclude that there is sufficient evidence to establish probable cause to believe that Jahmel Glen Blakeney committed attempted murder when he or his co-defendant shot Minors and Kuchler. *See U.S. v. Samuels*, 2009 WL 367578, at *5-6 (E.D.N.Y. Feb. 10, 2009) (finding probable cause on murder and attempted murder charges where the court found that the defendant acted in concert with another individual in the shootings). The proof submitted by the government is sufficient to support its extradition request.

## Conclusion

For the reasons stated above, I find that there is probable cause to warrant a finding of extradition against Jahmel Glen Blakeney and that he has failed to establish any defense to extradition. The government's request for a certificate of extraditability is granted.

**SO ORDERED.**

_____/s/_____
**STEVEN M. GOLD**
**United States Magistrate Judge**

**Brooklyn, New York**
**November 1, 2010**

*U:\eoc 2010\blakeney 110110.wpd*